IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In Re:  
REGINA L LEE,  
        Debtor.

Case No. 17-24873-KMP  
Chapter 13

REGINA LEE WEISS aka REGINA L LEE,  
        Plaintiff,  
vs.  

U.S. DEPARTMENT OF EDUCATION,  
        Defendant.

Adversary No.

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

Regina Lee Weiss ("Plaintiff") formerly known as Regina L Lee, by and through undersigned counsel, for their complaint against the U.S. Department of Education ("Defendant" or "USDOE"), respectfully alleges as follows:

### **JURISDICTION**

1. The United States District Court for the Eastern District of Wisconsin has jurisdiction of this action pursuant to 28 U.S.C. § 1334 because Plaintiff's Complaint arises under Title 11.

2. United States Bankruptcy Court for the Eastern District of Wisconsin has jurisdiction of this action pursuant to 28 U.S.C. § 157(a) because Plaintiff's Complaint arises from her bankruptcy case (No. 17-24873), filed under Chapter 13 of Title 11 in this Court.

//

//

//

## NATURE OF CLAIM

3. This is an adversary proceeding in which Plaintiff seeks from the Court a determination as to the dischargeability of educational debt(s) allegedly owed to Defendant, the excepting of which from discharge would impose an undue hardship on Plaintiff.

4. This action is a core proceeding under 28 U.S.C. § 157(b)(2) and Plaintiff consents to entry of final orders and judgment by the bankruptcy judge assigned to this matter.

## PARTIES

5. Plaintiff, Regina L. Weiss, is an individual living in Milwaukee, Wisconsin and is the debtor in the underlying bankruptcy proceeding.

6. Defendant is an executive agency of the federal government responsible for the monitoring and distribution of educational loans to Plaintiff and acted as a servicer of those loans in Plaintiff's underlying bankruptcy proceedings.

## PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

7. On May 16, 2017, Plaintiff filed a voluntary petition for bankruptcy relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Wisconsin.

8. On March 2, 2023, Plaintiff received an Order of Discharge from the Court in that matter.

9. Prior to the commencement of Plaintff's bankruptcy case, Plaintiff allegedly owed a debt to Defendant for funds borrowed and obtained through Defendant for educational purposes benefitting Plaintiff (the "Loans").

10. Plaintiff, by seeking bankruptcy protection, sought to achieve a fresh start in life; however, after completing the process, Plaintiff owed Defendant more Loan debt upon completion of her bankruptcy than Plaintiff did at its commencement: approximately $28,000.

11.     In 2004, Plaintiff applied for and received Loans from Defendant to pay for educational costs at the University of Wisconsin – Whitewater ("UWW").

12.     In 2005, Plaintiff was severely injured in a life-changing automobile accident in which she sustained multiple injuries to the left side of her head and body.

13.     The accident impacted Plaintiff's grades, which led to Defendant withholding financial aid from Plaintiff, forcing her to turn to private loans to further fund her education.

14.     After struggling to overcome the physical and emotional trauma caused by the accident, Plaintiff withdrew from UWW in 2007 without receiving a degree.

15.     Shortly thereafter in 2007, Plaintiff began working for AT&T: a job Plaintiff held for over ten (10) years.

16.     In 2010, Plaintiff applied for and received Loans from Defendant to pay for educational costs at Milwaukee Area Technical College ("MATC"), where Plaintiff, after two years of study, received an associate's degree in business administration.

17.     Then, in 2014, Plaintiff applied for and received Loans from Defendant to pay for educational costs at Cardinal Stritch University[1] ("CSU") where Plaintiff studied management of information systems.

18.     During this time, Plaintiff was suffering from debilitating migraine headaches, several of which resulted in hospitalization.  Doctors informed Plaintiff that her migraine headaches were likely caused by the head trauma she sustained from her accident in 2005.

19.     In addition to the migraines, Plaintiff began experiencing acute depression and anxiety because of her inability to function normally without pain.

---

[1] In April of 2023, Cardinal Stritch University closed due to financial challenges and declining enrollment.

20. These conditions negatively impacted Plaintiff's school work and job performance, ultimately causing Plaintiff to drop out of CSU and to be terminated from her job at AT&T.

21. Over the next few years, Plaintiff struggled to find and hold jobs as she began to suffer from daily migraines, and her depression and anxiety worsened.

22. During this time, Plaintiff discovered that chiropractic adjustments of her spine and neck alleviated the pain she continued to experience from her 2005 accident. In addition, Plaintiff found that these treatments decreased the frequency of her headaches.

23. In 2020, Plaintiff took a job at East Side Family Chiropractic (a chiropractic office Plaintiff frequented to receive treatment), agreeing to work for less money in exchange for accommodation in her schedule and discounts on treatment.

24. After four (4) years of working for her chiropractor and receiving weekly treatments, Plaintiff began to feel some improvement with her conditions.

25. In 2024, Plaintiff accepted a job at American Family Insurance, as a customer service representative.

26. In her current position, Plaintiff continues to miss time from work due to her migraines and her employer is accommodating when Plaintiff needs time off.

27. While her migraines have improved to some degree, Plaintiff does not see a path forward in any job that is unwilling to accommodate her medical conditions, which are chronic and ongoing.

28. Plaintiff's conditions severely limit her ability to benefit financially from the associate's degree Plaintiff received from MATC.

29. Plaintiff's conditions severely limit her ability to benefit financially from the limited education Plaintiff received from CSU.

30. Plaintiff's current employer, sympathetic to Plaintiff's conditions, accommodates Plaintiff by allowing her to work a flexible schedule with frequent absences. Plaintiff's inability to find similar accommodation at other places of employment severely hinders her ability to make more money.

**COUNT ONE**
(Determination of Dischargeability – 11 U.S.C. § 523(a)(8))

31. Plaintiff repeats and realleges the allegations contained in paragraphs 10 through 30 of this Complaint as if fully set forth herein.

32. "Under Bankruptcy Code section 523(a)(8), student loan debt is excepted from discharge unless excepting the debt from discharge imposes an undue hardship on the debtor." *Bell v. U.S. Dep't of Educ.* (*In re Bell*), 633 B.R. 164, 171 (Bankr. W.D. Va. 2021).

33. The Code does not define "undue hardship", but the Seventh Circuit Court of Appeals has adopted a three-part test for analyzing whether excepting a debt from discharge would pose an "undue hardship" on the debtor. *Krieger v. Educational Credit Management Corp.*, 713 F.3d 882 (7th Cir. 2013) (adopting test set forth in *Brunner v. New York State of Higher Educ. Services. Corp.*, 831 F.2d 395 (2d. Cir. 1987).

34. Under the *Brunner* test, to prove an "undue hardship," the debtor seeking discharge of student loans under section 523(a)(8) must show:

   a. that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [himself] and [his] dependents if forced to repay the loans;

   b. that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

    c. that the debtor has made good faith efforts to repay the loans. *Brunner*, 831 F.2d at 396.

35. Here, Plaintiff is unable to maintain a minimal standard of living if required to repay the Loans to Defendant. Plaintiff has no disposable income remaining each month after deducting necessary expenses from Plaintiff's income.

36. Plaintiff's inability to pay will persist in the future because Plaintiff suffers from a debilitating life-long medical condition. This medical condition prevents Plaintiff's from earning more money in the future than Plaintiff earns currently.

37. Plaintiff made good faith efforts to repay the Loans to Defendant by making monthly payments to Defendant when financially able to do so, by filing for bankruptcy relief in 2017 (wherein Defendant filed a claim and received payments from the bankruptcy estate), and by searching for employment that maximized Plaintiff's earning potential, while also accommodating her medical condition.

    WHEREFORE, Plaintiff respectfully requests this Court to enter an order finding that the Loans are not excepted from discharge pursuant to 11 U.S.C. § 523(a)(8) and to grant any other and further relief as the Court deems just and proper.:

**DATED**: October 28, 2024                  **NEELEY LAW FIRM, PLC**

/s/Garrett Kent
Garrett T Kent, 023303
Kenneth L Neeley, 025899
Neeley Law
1120 S. Dobson Rd., Ste 230
Chandler, AZ 85286
Tel: 480-802-4647
ecf@neeleylaw.com
*Attorney(s) for Plaintiff*